IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:10CV485

CALVIN L. HENNIGAN,               )
        Plaintiff,                )
                                  )
    v.                            )        RECOMMENDATION AND
                                  )            ORDER
                                  )
SHERIFF B.J. BARNES, CAPT.        )
REID, and LT. KENNETH             )
WATKINS,                          )
        Defendants.               )

---

## BACKGROUND

This case comes before the Court on Defendants' Motion for Relief from

Fraudulent Filings (Doc. 7). At the time the case was filed, Plaintiff was a pretrial

detainee at the Guilford County Jail in Greensboro, North Carolina ("the Jail"). In

his Complaint, Plaintiff made allegations regarding the general conditions in the

Jail by raising claims based on overcrowding, sleeping conditions, and overall

uncleanliness. It is also alleged that, on April 28, 2010, Plaintiff slipped and fell

onto a concrete floor after stepping in a puddle of water. He states that he

suffered a back injury, was taken to the hospital, was inadequately medicated,

and was still suffering back pains at the time of the filing (Doc. 2). Plaintiff alleged

in the Complaint that he successfully filed a grievance raising the issue of

overcrowding and questioning how the Jail could pass inspections. Plaintiff

claimed to have been able to take this grievance to the highest administrative level and to have received a response (*id.* §III).

Prior to answering, on July 29, 2010, Defendants filed their Motion for Relief from Fraudulent Filings (Doc. 7). The Motion claimed that Plaintiff was one of a group of inmates who worked together to defraud the Court, Defendants, and other persons by filing more than twenty lawsuits supported by fraudulent exhibits and statements. It also alleged that Plaintiff submitted false *in forma pauperis* applications which did not report deposits into his trust account.

Following a review of the Motion for Relief and associated evidence, the Court concluded (Doc. 22) that there was substantial evidence supporting Defendants' allegations, that serious sanctions might be warranted, and that Plaintiff had not filed an appropriate response to the Motion for Relief. In order to allow Plaintiff to respond in view of the possibility of sanctions, the Court entered an Order on March 4, 2011 which allowed Plaintiff to make a further statement under penalty of perjury explaining his actions or denying the allegations and showing cause why sanctions should not be entered (*id.*).

Plaintiff filed a responsive statement in which he denied wrongdoing (Doc. 23). In it, he maintained that erroneous statements on his *in forma pauperis* applications were the result of confusion on his part and a lack of clarity in the forms. He further stated that he did not realize that the forms were asking for the amounts of funds deposited into his inmate trust account. He did not directly

address allegedly false exhibits that were attached to some of his suits other than to state that he did not understand why his conduct in the other cases, which had been dismissed should affect this case. He asked that the Court not dismiss his case, but to instead appoint counsel.

Defendants replied by correctly pointing out that the in *forma pauperis* form specifically asks about trust account deposits and balances and that Plaintiff falsely answered those questions. They also pointed out that one of the reasons that this suit does not contain the allegedly false exhibits attached to Plaintiff's prior suits is that the inmates' scheme had been uncovered before this suit was filed. Additionally, they continued to allege that Plaintiff had made false statements even in the present case (Doc. 24).

In light of that record, the Court ordered an evidentiary hearing where both parties could present live testimony and appointed counsel to represent Plaintiff for purposes of the hearing. On Plaintiff's motion, the evidentiary hearing was continued from August 9, 2011 until September 26, 2011 and the related deadline to exchange witnesses was extended as well. The hearing took place on September 26, 2011 before the undersigned United States Magistrate Judge. In addition to himself, Plaintiff identified as witnesses Tony Harris and Bernardo Johnson (another former inmate of the Jail), all of whom were present for the hearing as were counsel for both parties and witnesses for the Defendants.

Based upon the evidence introduced at the hearing and the competent evidence of record, the Court finds the following facts by the preponderance of the evidence:

## FINDINGS OF FACT

1.    Plaintiff has filed three lawsuits in this Court: (1) *Harris, et al. v. Barnes, et al.* 1:09CV726-TDS-WWD (Doc. 19), in which he filed a 42 U.S.C. §1983 Complaint complaining of the conditions in cellblock B4 of the Jail within an action which had initially been filed by fellow inmate Tony Harris; (2) *Hennigan v. Aramark, et al.*, 1:10CV193 (Doc. 2), a 42 U.S.C. §1983 Complaint complaining about the Jail's allegedly inadequate food service; and (3) the instant action, *Hennigan v. Barnes, et al.*, 1:10CV485 (Doc. 2), in which his 42 U.S.C. §1983 Complaint again complained of Jail conditions, to include allegations of crowded and unclean conditions.

2.    Plaintiff attached as exhibits to a number of his filings Inmate Request Forms ("IRFs"). IRFs are form documents by which inmates at the Jail communicate requests to Jail staff and to which Jail staff respond. They are also a part of the Jail's grievance process. Before seeking a grievance form, an inmate must have first submitted an IRF addressing the concern and received a response which fails to satisfy him. He may then submit an IRF requesting a grievance form to grieve his concern.

4

### *Falsified IRFs Attached to Complaint in 1:09CV726*

3.      Plaintiff attached two exhibits to his Complaint (Doc. 19) in 1:09CV726, both of which purported to be IRFs submitted by Plaintiff to Jail staff to which Jail staff had failed to respond.[1]

4.      The first IRF attached to Plaintiff's Complaint in 1:09CV726 purports to have been submitted by Plaintiff on September 13, 2009 while housed in the Jail's B4 cellblock and requests a grievance form to complain about "the servere [sic] overcrowding that's in cell block B#4 ... ."

5.      The second IRF attached to Plaintiff's Complaint in 1:09CV726 purports to have been submitted by Plaintiff on June 22, 2009, also while housed in the Jail's B4 cellblock, and requests a grievance form to complain about the quantity and lack of seasoning of the Jail's food.

6.      In reality, Plaintiff did not arrive in the B4 cellblock until September 29, 2009 as evidenced by multiple Jail records. On both September 13, 2009 and June 22, 2009, he was actually housed in cellblock B1.

7.      Although in the ordinary operation of the Jail, copies of the IRFs submitted by inmates are filed in the inmate's "jail file," neither of the IRFs attached to Plaintiff's Complaint in 1:09CV726 could be found in Plaintiff's jail file.

8.      The Jail's 1st Lieutenant for the relevant time period, K.L. Watkins, ordinarily can identify the initials of Jail officers placed on IRFs to indicate their

---

[1] At the hearing, the Complaint in 1:09CV726 with the two purported IRFs attached as exhibits was introduced as Defendants' Exhibit 1 (Hennigan).

receipt but cannot identify the purported receiving employee's initials on either of the IRFs attached to Plaintiff's Complaint in 1:09CV726.

9.     Both the IRFs attached to Plaintiff's Complaint in 1:09CV726 are falsified documents generated by Plaintiff after the fact that were never actually submitted to Jail staff.

10.     Rather, the IRFs attached to Plaintiff's Complaint in 1:09CV726 were generated for the purpose of defrauding and misleading the Court, and might have done so but for Plaintiff's oversight in failing to accurately remember his earlier cell assignments at the later time that he actually generated these falsified exhibits.

**False Exhaustion Allegations in 1:09CV726**

11.     Section III of Plaintiff's Complaint in 09CV726, in response to the form Complaint's queries regarding exhaustion of administrative remedies, states that he filed his grievance "with/through Capt. Reid, and Major Montgomery on June 15th 2009."[2]

12.     Plaintiff had yet to be housed on the B4 cellblock as of June 15, 2009, only arriving there later, on September 29, 2009, and did not file a grievance or otherwise exhaust administrative remedies regarding the subject of the Complaint – the conditions on cellblock B4 – at anytime prior thereto.

---

[2] By Plaintiff's admission during the evidentiary hearing, this portion of the Complaint was written by Tony Harris, a fellow inmate with whom Plaintiff conspired to submit fraudulent filings to the Court.

13. Plaintiff's responses to the Section III queries concerning exhaustion of administrative remedies in his Complaint in 1:09CV726 are false, were known to Plaintiff to be false at the time that he gave them, and were intended to mislead the Court.

**Falsified Exhibits Related to Officer Ramsey**

14. Plaintiff attached seven exhibits (labeled A through G) to his Complaint in 1:10CV193 (Doc. 2), each of which purported to be an IRF submitted by Plaintiff to Jail staff to which Jail staff had failed to respond.[3]

15. The Complaint in 1:10CV193 and the exhibits attached to it generally pertained to alleged inadequacies regarding the Jail's food service and the Complaint named as defendants the Jail's contract food service provider as well as Sheriff Barnes, Lt. Watkins, and Officer Ramsey.

16. As to Officer Ramsey, the Complaint and its exhibits rely on her supposed role with the Jail's kitchen during the relevant time period.

17. Exhibit A to the Complaint in 1:10CV193 purports to be a December 5, 2008 IRF directed to Officer Ramsey from Plaintiff complaining about the food service.

18. Exhibit B to the Complaint in 1:10CV193 purports to be a January 11, 2009 IRF directed to Officer Ramsey from Plaintiff again complaining about

---

[3] At the evidentiary hearing, the Complaint in 1:10CV193 with the seven purported IRFs attached as exhibits was introduced as Defendants' Exhibit 17.

the food service and stating that Plaintiff had "reached out to you twice now ...
Please Respond!"

19.    Exhibit C to the Complaint in 1:10CV193 purports to be a January
19, 2009 IRF directed to Lt. Watkins from Plaintiff complaining that "I've
attempted to reach Ms. Ramsey in desperate hope of getting larger portion of
food served on these meals. Served three times a day in order to curve [sic] my
weight loss. But she refuses to respond to my valid request. I need a Grievance."

20.    Exhibit D to the Complaint in 1:10CV193 purports to be a February
2, 2009 IRF directed to Lt. Watkins from Plaintiff complaining that "I need a
Grievance! I have explained my problem in great detail where the food portioning
is concerned. My weight loss is serious and shouldn't be happening at this rate. I
need a Grievance!"

21.    In reality, Officer Ramsey did not become involved with the Jail's
kitchen until March 16, 2009 when she became Kitchen Supervisor, as
evidenced by multiple exhibits[4] and the testimony of Lt. Watkins and Officer
Ramsey.

22.    Officer Ramsey went out on medical leave due to serious health
problems from November 17, 2008 through February 4, 2009. Until that time, she

---

[4] Exhibits admitted on this issue included Officer Ramsey's time records, a Family and
Medical Leave Act notification to Officer Ramsey from her supervisor, and notes from
Officer Ramsey's doctor.

had served as a Detention Officer working on the Jail's housing floors, in the booking area, in the property area, and as a runner, but did not work the kitchen.

23.    Upon clearance from her doctor, Officer Ramsey first returned to work from her medical leave part time on February 4, 2009; at that time she was limited to working 4 hour days and was assigned a light duty job answering a phone.

24.    Upon clearance from her doctor, Officer Ramsey returned to work full time on March 16, 2009 and, at that time, first became assigned to the kitchen.

25.    Exhibits A and B to the Complaint in 1:10CV193 purport to have been directed to Officer Ramsey in connection with her role in the Jail's kitchen on December 5, 2008 and January 11, 2009, respectively, before she first became involved with the Jail's kitchen on March 16, 2009.

26.    Exhibit C to the Complaint in 1:10CV193, which purports to have been directed to Lt. Watkins on January 19, 2009, relies on the subterfuge that Officer Ramsey was Kitchen Manager during this time period and that Exhibits A and B were actually sent to Officer Ramsey.

27.    Exhibit D to the Complaint in 1:10CV193, which purports to have been directed to Lt. Watkins on February 2, 2009, relies on the subterfuge that Exhibits A-C were actually sent to Officer Ramsey (Exhibits A and B) and Officer Watkins (Exhibit C).

28. Exhibit E to the Complaint in 1:10CV193 purports to be an April 6, 2009 IRF directed to Sheriff Barnes from Plaintiff complaining that "I've written your kitchen sup. Ms. Ramsey and Lt. Watkins multiple times reaching out desperately for help with my weight loss ... and they've both completely ignored my valid request each and every time. I need a Grievance!"

29. Exhibit E relies on the subterfuge that Exhibits A-D were actually sent to Officer Ramsey (Exs. A&B) and Lt. Watkins (Exs. C&D) as they purport to indicate.

30. Additionally, Exhibit E purports to have been submitted by Plaintiff on April 6, 2009 while housed on the B1 cellblock.

31. In reality, Plaintiff was housed on the D4 cellblock on April 6, 2009 and did not arrive on the B1 cellblock until June 12, 2009.

32. Exhibit F to the Complaint in 1:10CV193 purports to be a July 21, 2009 IRF directed to Sheriff Barnes from Plaintiff complaining that "... I've been here in this jail for over a year requesting help with the lack of food being served on the trays I receive every day and I've asked you many times before to not only address this with the kitchen sup. Mrs. Ramsey but Lt. Watkins also. Please respond."

33. Exhibit F relies on the subterfuge that Exhibits A-E were actually sent to Officer Ramsey (Exs. A&B), Lt. Watkins (Exs. C&D), and Sheriff Barnes (Ex. E), as they purport to indicate.

10

34.     Exhibit G to the Complaint in 1:10CV193 purports to be an October 2, 2009 IRF directed to Captain Reid from Plaintiff complaining that "... I've done all I can do to get redress from Mrs. Ramsey (in the kitchen) Lt. Watkins, even Sheriff Barnes. Prayerfully you can help since they aren't willing to. ... ."

35.     Exhibit G relies on the subterfuge that Exhibits A-F were actually sent to Officer Ramsey (Exs. A&B), Lt. Watkins (Exs. C&D), and Sheriff Barnes (Exs. E&F), as they purport to indicate.

36.     Neither Lt. Watkins nor Officer Ramsey had seen any of the purported IRFs filed as Exhibits A-G to the Complaint in 1:10CV193 prior to their being filed in that case.

37.     None of the purported IRFs filed as Exhibits A-G to the Complaint in 1:10CV193 could be found in Plaintiff's jail file.

38.     The exhibit labels that appear on Exhibits A-G were placed thereon by Tony Harris, a fellow inmate with whom Plaintiff conspired to submit fraudulent filings to the Court.

39.     Each of the IRFs attached to Plaintiff's Complaint in 1:10CV193 as Exhibits A-G is a falsified document generated by Plaintiff after the fact that was never actually submitted to Jail staff.

40.     Rather, the IRFs attached to Plaintiff's Complaint in 1:10CV193 as Exhibits A-G were generated for the purpose of defrauding and misleading the Court, and might have done so but for Plaintiff's failure to remember when Officer

11

Ramsey became involved with the kitchen and his cell assignment on April 6, 2009 at the later time that he actually generated these fraudulent exhibits.

**False Exhaustion Allegations in 1:10CV193**

41.    Section III of Plaintiff's Complaint in 1:10CV193, in response to the form Complaint's queries regarding exhaustion of administrative remedies, indicates in response to the prompt "When did you file your grievance?": "No grievance, a request for a grievance.(1-19-09)(2-2-09)(4-6-09) B.J. Barnes, Lt. Watkins, Officer Ramsey."

42.    This response alludes to Exhibits C, D, and E to the Complaint, which are falsified IRFs dated January 19, 2009, February 2, 2009, and April 6, 2009 and directed to Lt. Watkins and Sheriff Barnes, as addressed above.

43.    Plaintiff's responses to the Section III queries concerning exhaustion of administrative remedies in his Complaint in 1:10CV193 are false, were known to Plaintiff to be false at the time that he gave them, and were made to mislead the Court.

**False In Forma Pauperis Declarations**

44.    In connection with his three lawsuits in this Court, Plaintiff has filed three Declarations and Requests to Proceed *In Forma Pauperis* ("IFP Declarations"), found at 1:09CV726 Doc. 18 (signed by Plaintiff October 27,

12

2009), 1:10CV193 Doc. 1 (signed by Plaintiff March 8, 2010), and 1:10CV485

Doc. 1 (signed by Plaintiff June 23, 2010).[5]

    45.    In each of these IFP Declarations, in response to Question 3,

Plaintiff declared under penalty of perjury that he had received no money from

any source within the preceding twelve months.

    46.    In each of these IFP Declarations, in response to Question 6,

Plaintiff declared under penalty of perjury that "[t]he total deposits to my Trust

Account for the last six months are  0 ."

    47.    In reality, Plaintiff had received multiple deposits into his inmate

account during the time period encompassed by these representations, to

include:

| Date | Amount | Source |
|------|--------|--------|
| 5/18/10 | $40.00 | Jeffery Gray Hat |
| 4/5/10 | $100.00 | Irene Ramos |
| 3/15/10 | $50.00 | Irene Ramos |
| 11/9/09 | $50.00 | Irene Ramos |
| 11/4/09 | $15.00 | Jamie Christmas |
| 10/15/09 | $20.00 | Unspecified |
| 9/8/09 | $100.00 | Irene Ramos |
| 8/28/09 | $30.00 | Monta Hall |
| 8/14/09 | $10.00 | Monta Hall |
| 7/23/09 | $100.00 | Irene Ramos |

    48.    These and other deposits to Plaintiff's Inmate Account at the Jail are

detailed in the Jail's record of Plaintiff's Inmate Account File, introduced at the

---

[5] At the hearing, these documents were introduced as Defendants' Exhibits 26-28
(Hennigan).

hearing as Defendants' Exhibit 29 (Hennigan), which the Court finds to be an accurate report of deposits to Plaintiff's Inmate Account.

49. Plaintiff offered nothing to contradict the evidence of the deposits to his Jail Account reflected in Defendants' Exhibit 29 (Hennigan) and in response offered only the excuse that he did not understand the IFP Declaration form.

50. This excuse is not credible in light of the clarity of the form's questions by which Plaintiff claims to have been confused, the numerous other falsehoods made by Plaintiff and found herein, and the Court's opportunity to observe Plaintiff's testimony first-hand.

51. In his IFP Declarations found at 1:09CV726 Doc. 18, 1:10CV193 Doc. 1, and 1:10CV485 Doc. 1, Plaintiff falsely declared that he had received no money from any source within the past twelve months and that the total deposits to his Trust Account for the last 6 months were zero, knowing that these declarations were false.

**Allegations of Sheriff Barnes' Purposeful Non-Responsiveness**

52. In his Complaint (Doc. 2) in 1:10CV485, Plaintiff alleged, among other things, that "Defendant Sheriff B.J. Barnes has purposely been non-responsive to Plaintiff's numerous relevant complaints" and that Plaintiff had "informed Sheriff Barnes on several periodic occasions of disgusting prison conditions."

14

53. Both of the IRFs which Plaintiff filed in his earlier actions which purported to have been addressed to Sheriff Barnes but ignored are bogus documents that have been addressed above (specifically, Exhibits E and F to the Complaint (Doc. 2) in 1:10CV193).

54. Under examination at the hearing, Plaintiff acknowledged that he had no knowledge that Sheriff Barnes had ever even received a complaint from him.

55. Plaintiff knew that he had no knowledge that supported his allegations that Sheriff Barnes had "purposely been non-responsive to Plaintiff's numerous relevant complaints" and that Plaintiff had "informed Sheriff Barnes on several periodic occasions of disgusting prison conditions" when he made those allegations and he further knew that the two IRFs which he had previously filed with the Court which purported to evidence Sheriff Barnes' having ignored his Complaints were falsified documents that had not actually been submitted.

**False Testimony at the September 26, 2011 Hearing**

56. At the September 26, 2011 evidentiary hearing in this matter, Plaintiff failed to provide an adequate explanation of any of the forgoing matters which was worthy of belief.

57. Rather, during his testimony at the evidentiary hearing, Plaintiff continued unabated his falsifications to the Court.

58.    In particular, while being examined concerning the first IRF attached to his Complaint in 1:09CV726 (Doc. 19 p. 5), which he purported to submit from the B4 cellblock on September 13, 2009, Plaintiff testified as follows concerning his housing location at that time:

Q:    All right. Where were you housed on September 13, 2009?

A:    I'm going to have to say B4 or it's been altered, one. I'm not sure.

Q:    I'm sorry?

A:    It's either B4 or it's been altered, one.

59.    This testimony was false in that Plaintiff knew that he had generated this falsified IRF after the fact, that it had not been altered, and that he was not housed in cellblock B4 on September 13, 2009.

60.    Plaintiff gave additional false testimony at the hearing while being examined concerning Exhibits A-G attached to his Complaint in 1:10CV193 and their conflict with when Officer Ramsey actually became involved in the Jail's kitchen:

Q:    Mr. Hennigan, the truth of the matter is you created Exhibits A and B and these others after the fact, didn't you?

A:    No.

Q:    It's your testimony that you did not create these documents later in 2009 and backdate them to indicate that they were addressed to Ms. Ramsey as kitchen supervisor? That's your sworn testimony today?

A:    Yeah, that's what I'm testifying.

16

61.     This testimony was knowingly false in that Plaintiff knew that he had generated Exhibits A-G later than the dates indicated thereon, backdated them, attached them to his Complaint in 1:10CV193 as exhibits, and filed them in an attempt to defraud and mislead the Court.

**Overall Factual Assessment**

62.     Plaintiff has committed multiple frauds on the Court, by several means, as described in the findings above.

63.     This conduct is remarkable for its quantity, persistence, and brazenly scheming nature.

64.     Plainly, Plaintiff, in concert with Tony Harris if not others, manufactured, backdated, and filed multiple utterly fraudulent IRFs with the Court in addition to making additional equally false representations in his filings and testimony.

65.     The Court readily infers that Plaintiff's misconduct identified above involved bad faith and vexatiousness of a high order.

Based upon the forgoing Findings of Fact, the Court reaches the following Conclusions of Law:

## CONCLUSIONS OF LAW

1.     When a party to a lawsuit deceives the Court or abuses the litigation process in a manner utterly inconsistent with the orderly administration of justice or so as to undermine the integrity of the judicial process, the Court has the

inherent power to impose appropriate sanctions. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461-62 (4th Cir. 1993); *Richardson v. Cabarrus County Board of Educ.*, No. 97-2313 1998 WL 371999, *2-6 (4th Cir. 1998). Similarly, the Court has the inherent authority to impose sanctions against a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" and this authority "extends to a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2123 (1991) (internal quotation marks omitted).

2.     Plaintiff, by the conduct identified in the findings above, has repeatedly committed acts which are in bad faith, vexatious, inconsistent with the orderly administration of justice, and which undermine the integrity of the judicial process and the Court can and should impose appropriate sanctions.

3.     One sanction which the Court may consider is the dismissal of Plaintiff's lawsuits with prejudice. Because of the severity of a dismissal with prejudice, before imposing this as a sanction the Court must consider the following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Shaffer*, 11 F.3d at 462-63.

4.    The first *Shaffer* factor – the degree of the wrongdoer's conduct –

weighs heavily in favor of greater rather than lesser sanctions. Given the facts

found above, there can be no doubt but that Plaintiff's level of culpability is of

high order.

5.    The second *Shaffer* factor – which tends to lessen the level of

appropriate sanctions where a party's attorney commits the wrongful conduct – is

inapplicable since Plaintiff himself committed the wrongful conduct.

6.    The third *Shaffer* factor – the prejudice to the judicial process and

the administration of justice – also weighs in favor of greater rather than lesser

sanctions. Plaintiff's wrongful conduct has not been isolated. Over the course of

three lawsuits, he has attempted to deceive the Court by false documents and

false statements, necessitating great time and effort by the Court to address

these matters. In addition to this waste of scarce judicial resources, the

administration of justice is implicated by Plaintiff's conduct. As Defendants have

pointed out, rooting Plaintiff's falsifications out of his lawsuits is difficult and has

been dependent upon Plaintiff's slip-ups in executing his scheme. The effect of a

failure to catch Plaintiff at his game would be to adjudicate his cases based upon

false evidence, a result fundamentally at odds with the administration of justice.

7.    The fourth *Shaffer* factor considers the prejudice to the victim. This

factor also weighs in favor of strong sanctions. The false documents and

representations proferred by Plaintiff directly prejudiced Defendants' ability to

defend themselves. Most of Plaintiff's misconduct took the form of falsified documents and false assertions related to the exhaustion of administrative remedies. Under the Prison Litigation Reform Act, the failure to exhaust administrative remedies is a prerequisite to Plaintiff's claims and would have provided a relatively speedy route to the dismissal of some or all of them absent Plaintiff's falsifications. In most instances, Plaintiff's falsifications also prejudiced Defendants on the merits in that, if believed, they indicated a refusal on the part of Defendants to respond at all to Plaintiff's complaints over jail conditions. Such evidence would be damaging to Defendants under the 14th Amendment standard applicable to Plaintiff's claims. Also relevant to this factor is the obvious magnitude of the effort required of Defendants to bring forward the issue of Plaintiff's litigation misconduct.

8.      The fifth *Shaffer* factor considers the availability of other sanctions to rectify the wrong by punishing culpable persons. Here, Plaintiff's circumstances make fashioning effective sanctions difficult. Although Plaintiff has falsified his IFP Declarations, a monetary sanction is nonetheless unlikely to be meaningful in light of Plaintiff's still meager resources. The challenges of punishing an indigent inmate adequately for conduct as egregious as that involved here leave a dismissal with prejudice as one of the few meaningful options.

9.      The sixth *Shaffer* factor takes into consideration the public interest. On one hand, there is a public interest in cases being decided on their merits.

There is, however, also a public interest that the time and resources of public officers and employees not be wasted on contending with fraudulent litigation tactics. Further, the public interest in deciding cases on their merits is reduced here, where a number of Plaintiff's allegations are demonstrable falsehoods. As a result, at best for Plaintiff the sixth *Shaffer* factor cuts both ways.

10.     Taking into consideration each of the *Shaffer* factors, the dismissal of this action with prejudice is plainly warranted.

11.     Another sanction which the Court may consider is the imposition of a pre-filing injunction, limiting Plaintiff's ability to bring additional litigation. Before imposing such a sanction, the Court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 817-18 (4th Cir. 2004).

12.     Having considered all the circumstances, including the four factors identified in *Cromer*, the Court concludes that a pre-filing injunction is also plainly warranted. In reaching this conclusion, the Court analyzes the *Cromer* factors as follows.

13. On the first *Cromer* factor, the Court notes again that Plaintiff's litigation misconduct spans each of his three lawsuits. Indeed, the fact that Plaintiff gave false testimony in the evidentiary hearing before this Court -- even after the seriousness of the matter, the Court's unwillingness to tolerate any further false statements, and the potential for criminal charges to result had been made explicit by the Court (10CV485 Doc. 22) -- offers little cause to believe that Plaintiff has or will mend his ways.

14. On the second *Cromer* factor, as to whether Plaintiff had a good faith basis for pursuing his lawsuits, the Court cannot answer this question on a wholesale basis. Perhaps Plaintiff felt that some of his complaints were justified; however, it is plain that his filings are in significant part comprised of and reliant upon total fabrications.

15. On the third *Cromer* factor, the burden on the Court and on the Defendants resulting from Plaintiff's falsified filings has been great.

16. On the fourth *Cromer* factor, the adequacy of alternative sanctions has been discussed above and, for the same reasons, this factor weighs in favor of a pre-filing injunction.

17. A pre-filing injunction must be narrowly tailored to fit the specific circumstances. *Cromer*, 390 F.3d at 818. Here, Plaintiff's litigation misconduct has occurred in the context of *pro se* litigation challenging conditions of his confinement and any pre-filing injunction should be limited to that context.

22

Further, it is not necessary to entirely foreclose Plaintiff from the ability to bring future *pro se* actions challenging conditions of his confinement. Rather, it is adequate that Plaintiff be enjoined from bringing any such actions in any Federal District Court without first obtaining leave of that court. Such limitations narrowly tailor the pre-filing injunction to the circumstances, consistent with the principles articulated in *Cromer*.

18.     Considering all the circumstances, the Court should impose as sanctions for Plaintiff's misconduct the following:

a) The dismissal of this action with prejudice;

b) The dismissal with prejudice of 1:10CV193, which was previously dismissed without prejudice;

c) A pre-filing injunction pursuant to which Plaintiff is enjoined from bringing any *pro se* action challenging a condition of his confinement (past, present, or future) in the Federal District Courts without first obtaining leave of that court and that in seeking leave of court, Plaintiff shall provide the Court from which he seeks leave a copy of this Recommendation and any Order adopting this Recommendation; and

d) That a copy of this Recommendation and Order and any Order adopting this Recommendation and Order be provided by the Clerk of Court to the United States Attorney for the Middle District of North Carolina so that the United States Attorney may determine, in his

23

discretion, whether criminal prosecution of Plaintiff for perjury or other offenses is appropriate.

## CONCLUSION

For the forgoing reasons, **IT IS RECOMMENDED** that all of Plaintiff's claims in this action be dismissed with prejudice as to all Defendants. **IT IS FURTHER RECOMMENDED** that 1:10CV193 be dismissed with prejudice as to all Defendants therein. **IT IS FURTHER RECOMMENDED** that Plaintiff be enjoined from bringing any *pro se* action challenging a condition of his confinement (past, present, or future) in the Federal District Courts without first obtaining leave of that court and that in seeking leave of court, Plaintiff must provide the Court from which he seeks leave a copy of this Recommendation and any Order adopting this Recommendation. **IT IS FURTHER RECOMMENDED** that a copy of this Recommendation and Order and any Order adopting this Recommendation and Order be provided by the Clerk of Court to the United States Attorney for the Middle District of North Carolina so that the United States Attorney may determine, in his discretion, whether criminal prosecution of Plaintiff for perjury or other offenses is appropriate. To this extent, Defendants' Motion for Relief from Fraudulent Filings should be **GRANTED**.

Further, it is **ORDERED** that Todd Allen Smith is relieved as counsel of record for Plaintiff. For that reason, it is also **ORDERED** that the Clerk of Court

24

serve a copy of this Recommendation and Order directly upon Plaintiff along with notification of his rights under Rule 72.

Finally, if this Recommendation is adopted, the Clerk of Court is instructed to terminate any and all pending motions in this matter and to close the case.

Wallace W. Dixon
United States Magistrate Judge

October 12, 2011